UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK LOWENBERG, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>ILLINOIS MUTUAL LIFE INSURANCE COMPANY,<br><br>    Defendant. | Case No. 21-cv-09739-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 16 |

Pending before the Court is Defendant's motion to dismiss, which is fully briefed. Dkt. Nos. 16 ("Mot."), 35 ("Opp."), 43 ("Reply").[1] The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to dismiss.

I. **BACKGROUND**

Plaintiff alleges that he purchased a medical insurance policy ("Policy") from Illinois Mutual Health in 1972 while residing in Michigan. Dkt. No. 1-2, Exh. A ("Compl.") ¶¶ 13, 15. Plaintiff asserts that he moved to California shortly thereafter and that he maintained continuous coverage for nearly fifty years by paying all Policy premiums on time. *See id.* ¶¶ 14-15.

The Policy contains a "Renewal Provision," described as "Guaranteed Renewable for Life of Insured," that explains:

> This Policy is issued for the term for which premium is paid commencing on the Date of Issue. It may be renewed during the life of the Insured by the payment of the premium at the Company's

---

[1] Plaintiff filed a procedurally improper sur-reply without the Court's permission. *See* Dkt. No. 44. Defendant's objection to Plaintiff's sur-reply is sustained, *see* Dkt. No. 46, and the Court **ORDERS** the clerk to strike docket no. 44.

> premium rates in effect at the time of renewal for like policies then being written or renewed. . . All renewal premiums shall be due and payable in advance or within the grace period provided in this Policy. Each renewal shall continue this Policy in effect for the term for which premium has been paid.

Opp. Exh. A at 1.[2]

According to Plaintiff, in April 2021 Defendant notified him that it would be discontinuing the Policy within six months because the pool of insureds had dwindled to only thirty individuals. Compl. ¶ 16. Plaintiff objects to the cancellation of the Policy, and asserts that he has not been able to find a suitable replacement given his current health condition. *Id.* ¶¶ 18-21. Plaintiff alleges that he asked Defendant to initiate an internal grievance process and also contacted the California Department of Insurance. *Id.* ¶¶ 18, 20. Plaintiff acknowledges that the state of Michigan approved the discontinuation of the Policy, but asserts that the California Department of Insurance has not. *Id.* ¶ 17.

Plaintiff argues that the terms of the Policy do not allow Defendant to cancel it, *see id.* ¶ 13, and brings causes of action for breach of the implied covenant of good faith and fair dealing, breach of contract, bad faith – failure to properly investigate a claim, intentional and negligent misrepresentation, intentional and negligent infliction of emotional distress, and declaratory relief under California law. *See generally id.*

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the

---

[2] Defendant asks the Court to take judicial notice of the Policy and three letters "under the incorporation-by-reference doctrine." *See* Dkt. No. 17. The Court finds that the Policy is incorporated by reference in Plaintiff's complaint because it is extensively referenced and forms the basis of his claims. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). The contract is therefore treated "as though [it is] part of the complaint itself." *See id*. The letters, however, do not form the basis of Plaintiff's claim, and the general references in the complaint to the issues described in them are not enough to incorporate them by reference. The letters are also not "generally known" facts "not subject to reasonable dispute" that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Id.* at 999. For these reasons, the Court **GRANTS** Defendant's request for judicial notice only as to the Policy, and otherwise **DENIES** it.

1 complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."
2 *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule
3 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible
4 on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible
5 when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that
6 the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

7 Rule 9(b) imposes a heightened pleading standard where fraud is an essential element of a
8 claim. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity
9 the circumstances constituting fraud or mistake."); *see also Vess v. Ciba–Geigy Corp. USA*, 317
10 F.3d 1097, 1107 (9th Cir. 2003). A plaintiff must identify "the who, what, when, where, and how"
11 of the alleged conduct, so as to provide defendants with sufficient information to defend against
12 the charge. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). However, "[m]alice, intent,
13 knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P.
14 Rule 9(b).

15 In reviewing the plausibility of a complaint, courts "accept factual allegations in the
16 complaint as true and construe the pleadings in the light most favorable to the nonmoving party."
17 *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nevertheless,
18 courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of
19 fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir.
20 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

21 Even if the court concludes that a 12(b)(6) motion should be granted, the "court should
22 grant leave to amend even if no request to amend the pleading was made, unless it determines that
23 the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203
24 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

### III. DISCUSSION

#### A. Dismissal under the primary jurisdiction doctrine is unwarranted.

27 Defendant argues that Plaintiff's case should be dismissed under the primary jurisdiction
28 doctrine. Mot. at 16-18; Reply at 5. As the Ninth Circuit has noted, "the doctrine is reserved for a

3

'limited set of circumstances' that 'requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency.'" *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 760 (9th Cir. 2015) (citation omitted). Under Ninth Circuit precedent, "'efficiency' is the 'deciding factor' in whether to invoke primary jurisdiction." *Id.* (citation omitted). "[E]ven when agency expertise would be helpful, a court should not invoke primary jurisdiction when the agency is aware of but has expressed no interest in the subject matter of the litigation." *Id.* at 761.

Plaintiff alleges that he has been "in touch" with the California Department of Insurance, Compl. ¶ 20, but there is no indication that the Department is actively investigating Plaintiff's claims. The Court finds that deferring to the Department would not serve efficiency or the uniform application of regulatory laws when it is not clear that the California Department of Insurance is interested in the relevant issue, and denies the motion to dismiss on this ground.

### B. Plaintiff has plausibly pled a claim for breach of contract.

The key issue here is one of contract interpretation. The "goal in construing insurance contracts, as with contracts generally, is to give effect to the parties' mutual intentions." *Minkler v. Safeco Ins. Co. of America*, 49 Cal. 4th 315, 321 (2010). "The threshold question is whether the contract is ambiguous—that is, reasonably susceptible to more than one interpretation." *Scheenstra v. California Dairies, Inc.*, 213 Cal. App. 4th 370, 389 (Cal. Ct. App. 5th Dist. 2013).[3] "If the court determines there is no ambiguity—that is, the language is reasonably susceptible to only one interpretation—then the judicial inquiry into meaning is finished and the clear and explicit meaning governs." *Id.* If there is ambiguity, the court can consider extrinsic evidence, or, "[i]f no extrinsic evidence was presented or if the extrinsic evidence was not in conflict, the resolution of the ambiguity is a question of law[.]" *Id.*

---

[3] Plaintiff originally filed his complaint in California state court, but Defendant removed the case to federal court based on diversity jurisdiction. *See* Dkt. No. 1. "In a case requiring a federal court to apply California law, the court must apply the law as it believes the California Supreme Court would apply it." *Kairy v. SuperShuttle Int'l*, 660 F.3d 1146, 1150 (9th Cir. 2011). And even if Michigan law were found to apply, it requires the same threshold analysis regarding ambiguity. *Farm Bureau Mut. Ins. Co. of Michigan v. Nikkel*, 460 Mich. 558, 566 (1999) (finding that "[a]n insurance contract is ambiguous when its provisions are capable of conflicting interpretations" but that "[w]here no ambiguity exists" the contract must be enforced "as written").

4

Plaintiff argues that he and Defendant contractually agreed to a Policy that "[was] renewable for" for the entirety of his life, and alleges that because Defendant guaranteed him he could renew the Policy, it breached its obligations by canceling it. *See* Compl. ¶¶ 34-40; Opp. at 3. Defendant acknowledges the existence of the contract, but argues that the contract does not say the Policy is "non-cancelable" and that "guaranteed renewable" does not mean the same thing as "non-cancelable." *See* Mot. at 5.

Under the heading "Guaranteed Renewable for Life," the contract states that the Policy "may be renewed during the life of the Insured by the payment of the premium[.]" Opp. Exh. A at 1. "May" is a word that indicates discretion or possibility. *See Legal Information Institute*, Cornell U Law School, https://www.law.cornell.edu/wex/may; *see also* "*May*," *Black's Law Dictionary* (11th ed. 2019). As used in the contract, it could indicate discretion on the part of the insured (choosing whether to pay the premium to renew the Policy) or on the part of the insurance company (choosing whether to grant the insured's election to renew). Giving effect to every word in the contract, the words "guaranteed renewable" suggest that the discretion imparted by the word "may" is discretion on the part of the insured, as the insured is "guaranteed" that the Policy can be renewed.

The contract goes on to state that "[e]ach renewal *shall* continue this Policy in effect for the term for which premium has been paid." *Id.* (emphasis added). Renewal occurs "by the payment of the premium at the Company's premium rates in effect at the time of renewal for like policies then being written or renewed." Plaintiff argues that he has paid the premium and therefore the Policy must continue in effect, *i.e.* be renewed. *See* Compl. ¶¶ 36-38.

Defendant is correct that the word "non-cancelable" is not written in the contract. However, it is at least plausible to read the renewal provision as obligating Defendant to continue renewing the Policy and providing coverage as long as Plaintiff is alive and pays his premiums. In this vein, it is also plausible to interpret the contract to mean that by discontinuing the Policy Defendant has failed to fulfill its promise to renew the Policy each time Plaintiff pays the premium for the duration of his life.

In the Court's judgment, both Plaintiff's and Defendant's interpretations are reasonable.[4] Because there are two different reasonable interpretations, the contract language is ambiguous and the Court cannot conclude as a matter of law that Plaintiff fails to state a claim for breach of contract.[5]

### C. Plaintiff has also plausibly pled a claim for breach of the implied covenant of good faith and fair dealing.

Under California law, "[t]here is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *Kransco v. Am. Empire Surplus Lines Ins. Co.*, 23 Cal. 4th 390, 400 (2000). A "breach of the implied covenant of good faith and fair dealing involves something beyond breach of the contractual duty itself." *Nieto v. Blue Shield of Cal. Life & Health Ins. Co.*, 181 Cal. App. 4th 60, 86 (Cal. Ct. App. 2d Dist. 2010) (affirming summary judgment for the defendant in a case regarding a health insurance rescission dispute). "[B]ad faith implies unfair dealing rather than mistaken judgment," and a plaintiff must show that the insurer engaged in "a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement." *Id.*

Plaintiff alleges that he has performed his duties under the contract for close to fifty years, and that he depended on his contracted-for right to continue renewing the Policy, especially given his current health issues. *See* Compl. ¶¶ 13-21. Plaintiff further alleges that despite promising to renew the Policy for the rest of Plaintiff's life so long as he paid the premiums, Defendant chose to renege on the deal because the Policy was no longer profitable. *See id.* ¶¶ 13-23. Construing the complaint in the light most favorable to Plaintiff, the Court finds that Plaintiff has adequately pled a claim for a breach of the implied covenant of good faith and fair dealing.

---

[4] Defendant's argument that "guaranteed renewable" is an industry term of art that is meant to mean something different than "non-cancelable" is a fact-driven argument better suited to a motion for summary judgment.

[5] Defendant also urges the court to dismiss Plaintiff's declaratory judgment claim because it asserts his underlying breach of contract claim is defective. Because Plaintiff has plausibly pled a claim for breach of contract, Defendant's argument regarding declaratory judgment is moot.

### D. Plaintiff has not plausibly alleged a claim for bad faith failure to properly investigate a claim.

Plaintiff alleges that Defendant acted in bad faith when it failed "to timely and adequately investigate [Plaintiff's] claims" and "[refused] to pay amounts due to [Plaintiff] under the [Policy]." *Id.* ¶ 43. However, Plaintiff does not allege in his complaint that he submitted claims for covered benefits to Defendant or that he is waiting for payment from Defendant for validly submitted claims. The Court concludes that Plaintiff has not plausibly alleged a claim for a bad faith failure to investigate a claim.[6]

### E. Plaintiff has not pled a claim for intentional or negligent misrepresentation with the required particularity.

"The elements of a claim for intentional misrepresentation are (1) a misrepresentation; (2) knowledge of falsity; (3) intent to induce reliance; (4) actual and justifiable reliance; and (5) resulting damage." *Cisco Systems, Inc. v. STMicroelectronics, Inc.*, 77 F. Supp. 3d 887, 897 (N.D. Cal. 2014) (citation omitted). *Id.* "The essential elements of a claim for negligent misrepresentation are the same as for intentional misrepresentations, except that it does not require knowledge of falsity, but instead requires a misrepresentation of fact by a person who has no reasonable grounds for believing it to be true." *Id.* (citation omitted). Under FRCP 9(b), circumstances constituting fraud must be plead with particularity.

Plaintiff alleges that Defendant "represented to [him] that his policy would be in effect throughout his lifetime" and that such "representation was false in that [Defendant] failed to honor the agreement[.]" Compl. ¶¶ 49, 58-59. These allegations do not meet the specificity requirement of FRCP 9(b). For example, Plaintiff does not identify who made representations to him or allege why the person making these representations should have known they were false or without reasonable grounds to believe they were true when made. Even construing the complaint in the light most favorable to him, the Court finds that Plaintiff has not adequately pled a claim for

---

[6] In his opposition to Defendant's motion to dismiss, Plaintiff did not defend his claims for bad faith failure to properly investigate a claim, intentional infliction of emotional distress, or negligent infliction of emotional distress. *See* Opp. The Court still evaluates these claims and concludes they should be dismissed with leave to amend. However, before filing any amended complaint, Plaintiff's counsel should evaluate whether there is a good faith basis for asserting these claims, given Plaintiff's failure to respond to Defendant's motion to dismiss them.

intentional or negligent misrepresentation.

### F. Plaintiff has not plausibly alleged a claim for intentional infliction of emotional distress.

To state a cause of action for intentional infliction of emotional distress, "the plaintiff must allege: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; (3) and actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hailey v. California Physician's Servs.*, 158 Cal. App. 4th 452, 473-74 (Cal. Ct. App. 4th Dist. 2007) (quotation omitted). The conduct alleged must be "so extreme and outrageous as to go beyond all possible bo[u]nds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 474 (quotation omitted).

Although there are circumstances in which courts have found an insurer's conduct to be so extreme and outrageous as to go beyond the bounds of decency, Plaintiff has not sufficiently alleged such conduct here. Courts have found insurers' conduct to be outrageous where it "sends harassing letters to the claimant and makes false accusations, putting the claimant in fear of unfounded litigation if the claimant does not drop the claim . . . or where an insurer's investigator engages in a romantic relationship with the claimant so that he could take photographs of her to compromise her worker's compensation claim." *Coleman v. Republic Indemnity Ins. Co.*, 132 Cal. App. 4th 403, 416 (Cal. Ct. App. 2d Dist. 2005). "But California courts have held that delay or denial of insurance claims is not sufficiently outrageous to state a cause of action for intentional infliction of emotional distress." *Id.* at 417.

In *Hailey v. California Physician's Servs.*, the California Court of Appeal concluded that a plaintiff "sufficiently alleged extreme and outrageous conduct" where the plaintiff's health insurer obtained information entitling it to rescind its policy but deliberately forewent rescission until after the plaintiff suffered a serious injury. *Hailey*, 158 Cal. App. 4th at 476. The court explained that an insurer "does not subject itself to liability for intentional infliction of emotional distress by attempting in good faith to assert its perceived legal right to rescind a health care services contract,

even if it is likely the subscriber will suffer emotional distress." *Id.* But an insurer could act in an outrageous manner when it "deliberately forgoes rescission until after the subscriber has suffered a serious illness or injury." *Id.*

The Court concludes that Plaintiff's allegations do not rise to the level of "extreme and outrageous" conduct necessary to support a claim for intentional infliction of emotional distress. Unlike the plaintiff in *Hailey*, Plaintiff here does not allege any facts suggesting that Defendant decided to rescind the Policy because of his medical bills, or point to other circumstances suggesting extreme and outrageous conduct beyond the bounds of decency. Because the Court cannot say leave would be futile, Plaintiff's claim for intentional infliction of emotional distress is dismissed with leave to amend.

### G. Plaintiff has not plausibly alleged a claim for negligent infliction of emotional distress.

Under California law, "[t]he negligent causing of emotional distress is not an independent tort, but [rather is] the tort of negligence." *Burgess v. Superior Court*, 2 Cal. 4th 1064, 1072 (1992). Therefore, "[t]he traditional elements of duty, breach of duty, causation, and damages apply." *Id.* California law generally does not allow negligence claims for breaches of commercial contracts. *See Erlich v. Menezes*, 21 Cal. 4th 543, 554-555 (1999). And, "a preexisting contractual relationship, without more, will not support a recovery for mental suffering where the defendant's tortious conduct has resulted only in economic injury to the plaintiff." *Id.*

Plaintiff does not allege that Defendant owed him a duty of care beyond the implied promise to perform the contract. It is also not apparent from the complaint and Plaintiff's conclusory allegations that Plaintiff has suffered injuries beyond economic ones. Because the Court cannot say leave would be futile, Plaintiff's claim for negligent infliction of emotional distress is dismissed with leave to amend.

### IV. CONCLUSION

The Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to dismiss. The Court **GRANTS** Defendant's motion to dismiss as to Plaintiff's claims for bad faith failure to properly investigate a claim, intentional misrepresentation, negligent misrepresentation,

intentional infliction of emotional distress, and negligent infliction of emotional distress. Dismissal is with leave to amend, and any amended complaint must be filed by September 23, 2022. The Court **DENIES** Defendant's motion to dismiss as to Plaintiff's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory judgment. The Court also **GRANTS IN PART** and **DENIES IN PART** Defendant's request for judicial notice, *see* Dkt. No. 17, and **ORDERS** the clerk to strike docket no. 44.

The Court **SETS** a telephonic case management conference for October 18, 2022 at 2:00 p.m. The Court also **DIRECTS** the parties to submit a joint case management statement by October 11, 2022. All counsel shall use the following dial-in information to access the call:

Dial-In: 888-808-6929;

Passcode: 6064255

For call clarity, parties shall NOT use speaker phone or earpieces for these calls, and where at all possible, parties shall use landlines. This order terminates docket no. 45.

**IT IS SO ORDERED.**

Dated: 8/30/2022

HAYWOOD S. GILLIAM, JR.
United States District Judge